Avery and Israel Rosado, miscellaneous reports, such as latent fingerprints report, a comparison latent prints report, hair and fiber report, EMS reports belonging to a Paul Avery and Abraham Pollack, ballistics reports, a Crime Scene report and the wrap sheets or criminal records of Edwin Oliva, Adrian Diaz, Angel Santos and Paul Avery, the witnesses who we expect to call and who have in fact criminal records.

Judge, you know, I just may have misspoken. The actual tapes themselves are not here. What I have are the transcripts. The tapes are being copied and I will have those later.

THE COURT: You have the transcripts?

MR. HARRISON: The transcripts will be accurate in my defense.

(Handing.)

THE COURT: So your lunch hour will not be wasted. You will have something to do. If I may, one minute? The tapes you will receive sometime this morning.

MR. HARRISON: It's understood, Your Honor. The only question I have, so I am clear -- here is a signed copy of the receipt acknowledged.

MR. VECCHIONE: Thank you.

(Handing.)

MR. HARRISON: (Continuing) The question I have is the cooperation agreement.

THE COURT: If there is one.

MR. VECCHIONE: We have no cooperation agreement with any of the witnesses, Judge.

MR. HARRISON: And -- .

MR. VECCHIONE: There is Giglio material which I will turn over to counsel. I don't have it all together at this point. I can actually tell you what it is.

With respect to Angel Santos, and I will tell this to counsel now so he is aware of what the situation is, Angel Santos is in protective custody at this point because of threats that were made to him over the last several months by people he claims to be on behalf of Mr. Collins. He is being protected by the District Attorney's office. He is in our custody; has been provided with a hotel room, guarded by two detectives, and has been given food and food money during the course of his stay. In addition, the only other promise we made to Angel Santos is that following this case we will

relocate him and his family and we will attempt to help him find a job. With respect to the other witnesses, there is no promise except as to Edwin Oliva and the promise as to Edwin Oliva is to send a letter to the Parole Board detailing his cooperation with the office and to attempt to relocate him when he is out of jail.

THE COURT: And he is not in the custody of the D.A.?

MR. VECCHIONE: He is not in the custody of the D.A. He is in the custody of the New York State Department of Corrections.

MR. HARRISON: Let me --

THE COURT: Now, the only thing I am suggesting to you, as far as Santos is concerned, in view of what Mr. Vecchione says, if he testifies, when he testifies, that in your cross examination you be very careful about this business about the D.A. keeping him in a hotel or giving him money for food, because I would not want this jury to get the impression, because if you say something to that effect, he will come back and say, well, the only reason I am there is because somebody on behalf of the defendant threatened me or blah blah

blah, so I am sure you are smart enough and you are experienced enough not to open the door.

MR. HARRISON: I did not intend to go into that.

MR. VECCHIONE: Judge --

MR. HARRISON: I don't need to go --

THE COURT: You know, sometimes lawyers, they just go stumbling in, so to speak, and I like to tell them ahead of time that if you open the door, it's going to be swung right open by the D.A.

MR. VECCHIONE: Judge, I am sorry, I did neglect to tell you two things: One, with respect to Israel Rosado, who is another witness that we intend to call, he's been given a hotel room by the district attorney's office. He is not in our custody but he, as well, has received threats, threats to his home. He is the father-in-law of Mr. Santos, so we moved him to a hotel last night and we would be giving him food money with respect -- in the days that are coming up until he can be relocated. We intend to relocate him. Adrian Diaz, another individual, was brought by my office and, in fact, by myself back from Puerto Rico. He is not in custody of any kind. He is

also at a hotel and he's been given food money for the period of time that he's been here as well as paying for his hotel. We intend to send him back to Puerto Rico after he has completed his testimony.

THE COURT: And your office paid the fare to and from New York City?

MR. VECCHIONE: To New York City. We will pay back to Puerto Rico when he completes his testimony.

THE COURT: That's what I am saying. You brought him here, you are paying the air fare and you are going to give him air fare to go back.

MR. VECCHIONE: Yes, sir.

THE COURT: Is that clear, sir? So now --

MR. HARRISON: It's clear, Your Honor.

THE COURT: -- you have the whole picture.

MR. HARRISON: The only thing that I am curious about, about this entire scenario, is with Mr. Oliva. Inasmuch as he is allegedly saying --

THE COURT: He was in on the planning.

MR. HARRISON: He was in on the planning. So, therefore, if he was in on the planning, he would thus have the possibility of being

indicted -- hypothetical, on a felony murder.

THE COURT: Unless he abandoned it before the first step of the conspiracy was taken.

MR. VECCHIONE: Judge, he wasn't part of the planning. He overheard the planning.

THE COURT: Okay.

MR. HARRISON: Okay.

THE COURT: You can explore it any way you want.

MR. HARRISON: I understand that, Your Honor. May I approach one minute before we begin?

THE COURT: Yes, sure.

(Whereupon, a discussion was had off the record at the bench between all counsel and the Court.)

THE COURT: All right. Can we get the jurors in and bring the other ones down?

(Whereupon, the panel of prospective jurors entered the courtroom.)

(Whereupon, the jurors resumed their seats in the box.)

THE CLERK: Martha Smalls. Joan Dziedzic. Desere Dansby. Francis Epstein. Emma Gene. Lucille Consolmagno. John Gomez. Thomas

Ponterella. Peter Igneri. Annami Joe Young. Anne Saverese. Mary Arroyo. Gloria Arist-Neequaye. Allison Antino.

Case on trial continued.

(Jury selection continued. Not recorded.)

* * * *

THE CLERK: Counsels, we have nine sworn jurors. The People have exhausted seven challenges, the defense eleven challenges. As to the entire panel, any challenges for cause, People?

THE COURT: Denied on number five.

MR. VECCHIONE: I am going to make it for the record.

What --

THE COURT: I know what he thinks. He's been before me.

THE CLERK: The entire panel.

MR. VECCHIONE: That's it for cause.

THE CLERK: Defense, cause?

MR. HARRISON: No.

THE CLERK: Peremptorily, first three, People?

MR. VECCHIONE: All challenged.

Proceedings

THE CLERK: Next three, peremptorily, People?

MR. VECCHIONE: Five and six.

THE CLERK: Defense?

MR. HARRISON: No, I challenge four.

THE CLERK: Next three, peremptorily, People?

MR. VECCHIONE: All acceptable.

MR. HARRISON: Can you just give me one minute?

MR. VECCHIONE: All acceptable; seven, eight, nine are acceptable.

MR. HARRISON: I am just going to think out loud for a minute. Seven is acceptable to the defense.

Off the record.

(Whereupon, a discussion was had off the record between counsel and the Court.)

MR. HARRISON: I am challenging eight.

THE CLERK: That makes John Gomez juror number ten and Carroll Farrel juror number eleven.

As to Annami Young, peremptorily, People?

MR. VECCHIONE: Challenged.

THE CLERK: As to Anne Saverese, peremptorily, People?

MR. VECCHIONE: Acceptable.

Proceedings

THE CLERK: Defense?

MR. HARRISON: Challenged.

THE CLERK: As to Mary Arroyo, peremptorily People?

MR. VECCHIONE: Acceptable.

THE CLERK: Defense?

MR. HARRISON: Challenged.

THE CLERK: As to Gloria Arist-Neequaye, peremptorily, People?

MR. VECCHIONE: Judge, give me a second?

(Short pause in the proceedings.)

MR. VECCHIONE: Challenged.

THE COURT: Fourteen.

MR. HARRISON: No challenge.

THE CLERK: As to Allison Antino, peremptorily, People?

MR. VECCHIONE: Acceptable.

THE CLERK: Defense?

MR. HARRISON: Challenged.

THE COURT: We have another round to go.

MR. VECCHIONE: One and two alternates, right?

THE COURT: How many challenges have they excercised?

THE CLERK: Fourteen and sixteen.

THE COURT: How many in this round?

THE CLERK: The People have exhausted seven.

THE COURT: And the defense?

THE CLERK: Five.

THE COURT: This round?

THE CLERK: This round.

THE COURT: All right, let's go.

(Back in the courtroom.)

THE CLERK: The following two jurors whose name I call kindly remain seated. Everyone else has been challenged.

Remain seated, John Gomez and Carroll Farrel. Everyone else step out and return to Central Jury.

THE COURT: Are the remaining two jurors, satisfactory?

MR. VECCHIONE: Yes, Your Honor.

MR. HARRISON: Yes, Your Honor.

THE COURT: Jurors, kindly stand and raise your right hand.

Do you and each of you solemnly swear or affirm that you will try this action in a just and impartial manner and to the best of your judgment

render a verdict in accordance with the law and the evidence, so help you God?

(Jurors respond in the affirmative.)

THE COURT: Will you show the jurors where the jury room is so they can leave their clothing? And bring them back down.

THE COURT OFFICER: You want me to bring the rest of the panel?

THE COURT: Yes.

(Whereupon, the sworn jurors exited the courtroom.)

THE CLERK: Jurors, once again, when you hear your name called, kindly answer "here" to the calling of your name. Take your belongings and take the seat that's assigned.

Take seat one, Joanne Farmer.

Take Seat number two, Annette Dymtzynski.

Take seat three, Ida Burrell.

Take seat four, Helene Mezzina.

THE JUROR: Can I approach the bench?

(Whereupon, there was a discussion off the record at the bench with the juror, counsel and the Court.)

THE COURT: Go back to Central Jury.

Consent?

MR. VECCHIONE: Yes, Judge.

MR. HARRISON: Yes.

THE CLERK: Take seat four, Sharome Edwards Alleyne. That's Edwards, Alleyne.

THE CLERK: Do you have a relative working in this building?

THE JUROR: No.

THE CLERK: Take seat five, Martha McDonald. And take seat number six, Evelyn Ranza.

THE COURT: Good morning.

(Jury selection not recorded.)

* * *.

(Whereupon, the following transpired outside the presence and hearing of the prospective jurors.)

THE CLERK: Counselors, we have 11 sworn jurors.

MR. VECCHIONE: Mr. Harrison and I have discussed it, Judge. Juror number five, Miss McDonald, is acceptable to both sides as juror number 12.

THE COURT: That's agreeable?

MR. HARRISON: Yes.

THE COURT: Juror number five, her name?

MR. VECCHIONE: We have--

THE CLERK: McDonald.

MR. VECCHIONE: Then we have agreed on juror number three, Miss Burrell, as alternate number one. And juror number one, Miss Farmer, is alternate number two.

THE COURT: Is that agreeable?

MR. HARRISON: That's agreeable and I just -- I don't want -- I want to make one thing for the record.

THE COURT: Yes?

MR. HARRISON: That as a defense lawyer's view or perception, that juror number five is a straight shooter. I feel comfortable with her. I feel she will call it as the law requires, just in case there is any issue as to --

THE COURT: It was one juror that was required. You already had excercised something like 16 challenges and you agreed with Mr. Vecchione that for the purpose of picking one juror, you didn't want to go beyond your twenty challenges.

MR. HARRISON: I didn't and I --

THE COURT: You are satisfied with number five.

MR. HARRISON: Quite frankly, on both the defendant -- off the record.

(Whereupon, a discussion was had off the record between all counsel and the Court.)

THE COURT: As Mr. Vecchione agreed that we not go through the normal routine, and juror number five was selected as the 12th juror.

MR. VECCHIONE: Yes.

THE COURT: And that is the juror sitting in number five seat?

MR. VECCHIONE: Yes.

(Whereupon, the following transpired in the presence and hearing of the prospective jurors.)

THE CLERK: The following three jurors whose names I call, please remain seated. Remain seated, Martha McDonald, Ida Burrell and Joanne Farmer. The following jurors, return to Central Jury.

Jurors, can I ask you to kindly step out of your jury box and I will give you your assigned seats. Miss Burrell, you will be alternate number one, first seat on the side, and Miss Farmer, you will be alternate number two.

THE COURT: The first seat there down below.

THE CLERK: And Miss Farmer, you will be sitting right next to her.

Take seat number one, Phyllis Kessler. You will be this jury's Foreperson. Juror number two, Anne Curatolo, take seat number two. David Morrero, juror number three. Patrick Monaghan, juror number four. And seat five, Cybil Hammil. Elizabeth Knafo, juror number six.

In the second row, seat number seven, Arthur Warshowski, Theresa Gablowski, Cynthia Bollo, John Gomez, Carroll Farrel, and Martha McDonald, you will take seat number 12.

Jurors, once again, can I ask you all to kindly stand and raise your right hand? Do you and each of you solemnly swear or affirm that you will try this action in a just and impartial manner and to the best of your judgment render a verdict in accordance with the law and the evidence, so help you God?

(Jurors respond in the affirmative.)

THE CLERK: Please be seated and give your attention to the Court at this time.

THE COURT: Miss Kessler and Ladies and

Preliminary Instructions

Gentlemen of the Jury: I am going to give you a little preview of what is going to happen at this trial. The law reads that the order of a jury trial in general is as follows: The jury must be selected and sworn. Then the Court must deliver preliminary instructions to the jury. That I am about to do. When I get through, the law provides that the People must deliver an opening address to you and after that the defendant may deliver an opening address to the jury. You will note the difference. The People "must" open. The defendant "may" open. That means that the assistant district attorney will stand before you and tell you what this case is all about. He will not merely tell you that this is a murder case. He will go into the counts of the indictment. He will tell you how he expects to prove the case, what witnesses he expects to call and what he expects the testimony of witnesses to be.

Now, listen very carefully to his opening, ladies and gentlemen, because a trial is sometimes like the picture on the box of a jigsaw puzzle. The pieces are in the box. The district attorney will then call witnesses to make the picture, but

sometimes the witnesses may be called out of turn. Witnesses that may be testifying, they will be excused temporarily so another witness can testify and go about his business, and then the witness who was on the stand will be recalled. However, whatever the district attorneys says is not evidence, but by listening to his opening statement, you will know what the district attorney intends to prove insofar as this trial is concerned; simply the picture that's on the box. And then the witnesses will come in and he will attempt to fill out that picture with the testimony of those witnesses.

Now, as I said, the district attorney must open and the defendant may open. That means that the defense counsel has a right to waive his opening. If he should do that, you are not to draw any inference from that at all. You are not to try to second-guess defense counsel. He may say to himself: I have heard the district attorney's opening and I can't believe that he is going to prove what he says he is going to prove, so I am not going to open. If he does that, you are not to draw any inference unfavorable to the defendant.

Preliminary Instructions

After the defendant has opened or waived his opening, the law provides that the People must offer proof in support of the indictment. That means that the district attorney will call the witnesses. He will ask each witness questions. When he gets through, defense counsel will cross-examine those witnesses. Then, perhaps there may be some redirect examination and perhaps some recross examination. Now, you must not only listen very carefully, but you must watch the witnesses as they testify on direct examination and on cross examination. Ask yourself: Are they hesitant? Are they evasive? Do they answer forthright? Because you have to determine the credibility of the witnesses.

Now, one of your aids in determining their credibility is by observing their demeanor on the stand, so your duty is not only to listen but very carefully to watch. After the People have offered evidence in support of the indictment, the law provides that the defendant may offer evidence in his defense. Again, it's "may". He may decide to rest after the People have rested. If that should be done, you are not to draw any inference

unfavorable to the defendant.

The law provides in the event there is evidence offered by the defense, the People might offer evidence in rebuttal of the defense evidence. The defendant may then offer evidence in rebuttal of the People's rebuttal and so forth and so on.

The law further provides that at the conclusion of the evidence, the defendant may deliver a summation to the jury and after that, the People may then deliver a summation to the jury. You will note it's "may" and not "must," so that both of the sides or one side may waive a summation. However, I have been lawyer and a judge for a long time and I have heard hundreds of cases. I have never seen a lawyer waive a summation. That is the time they wish to get up before you, go over all the evidence with you, recall what the witnesses testified to. They will urge you to draw certain inferences in that testimony and ultimately to decide the case in favor of their respective client. So I doubt that either side will waive a summation.

After summation, the Court must then deliver

a charge to the jury. I will tell you what the law is insofar as this case is concerned. I am not going to give you a course in criminal law or on evidence. I am going to tell you what the law is as it relates to this case. That law as I have indicated to you, you must take from me whether you like the law or dislike it and apply it to the facts as you find the facts to be. After I charge you on the law, you must then retire to deliberate and, if possible, render a verdict.

Now, I am the Judge of the law. You are the sole judges of the facts. Being a judge of law means that my duty is to preside over this trial to see that it is conducted in a fair and impartial manner, which means I will be called upon to rule on objections and on motions. I may grant some and deny others. The law tells me how a trial is to be conducted and what evidence is admissible, what evidence is not admissible. As a matter of law, I am vested with a certain amount of discretion in some of my rulings. I have to decide whether the evidence will be relevant and so forth. It is my job to keep the case within bounds and